UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRON GREGORY JESSIE,

        Plaintiff,        Civil Action No. 21-11201

v.        Judith E. Levy
        United States District Judge

PATRICE PHANEUF, *et al.*,        David R. Grand
        United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 79)

On May 15, 2021, plaintiff Myron Jessie ("Jessie"), an incarcerated person, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). At the time of the events at issue in his complaint, Jessie was confined at the Macomb Correctional Facility ("MRF") in Lenox Township, Michigan. (*Id.*, PageID.1-2).

At this stage of the proceedings, Jessie's remaining claims are for violations of the Eighth Amendment brought against four current and/or former employees of the Michigan Department of Corrections ("MDOC") who were employed at MRF during the relevant time period: Patrice Phaneuf, RN; Emily (Eames) Nguyen, RN; nursing supervisor Jay Saph; and x-ray technician Aurelia Wolosion (collectively "Defendants"). An Order of Reference was entered on March 13, 2023, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 87).

Now pending before the Court is Defendants' Motion for Summary Judgment,

which was filed on December 16, 2022. (ECF No. 79). Jessie filed a response to this motion on January 10, 2023.[1] (ECF No. 82). No reply was filed.

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 79)** be **GRANTED**.

## II. REPORT

### A. The Allegations in Jessie's Complaint

As set forth above, at all relevant times, Jessie was confined at MRF. In his complaint, Jessie alleges that, on August 8, 2019, he attempted suicide by swallowing a 4-inch metal piece that he broke off of his eyeglasses. (ECF No. 1, PageID.3). He alleges that the metal piece was "very thin and had a slight point on it." (*Id.*). After this incident, Jessie was placed in a suicide watch cell for observation. (*Id.*). Once there, Jessie alleges that Nurse Phaneuf came to check on his condition, at which point he told her what he had done, complained of an "agonizing sharp pain in his stomach[,]" and pleaded for emergency aid. (*Id.*). According to Jessie, Nurse Phaneuf then reported this incident – "without a sense of urgency" – to an unknown doctor. (*Id.*). Allegedly, Nurse Phaneuf told Jessie that an x-ray technician was not available; the doctor with whom she had spoken

---

[1] The entirety of Jessie's response reads as follows: "Plaintiff Jessie would like to oppose defendants [sic] motion because of mootness and redundance." (ECF No. 82, PageID.711).

2

did not believe the situation was urgent enough to merit an emergency x-ray at an outside hospital; and Jessie would be placed on a 48-hour liquid diet in an attempt to "expel" the metal piece through a bowel movement. (*Id.*, PageID.4).

Jessie then alleges that, two days later, Nurse Nguyen visited him while making rounds. (*Id.*). Jessie claims he complained to Nurse Nguyen of continued pain, as well as blood in his stool, but she denied his request for pain medication at that time. (*Id.*). On August 14, 2019, Jessie was provided with his first of several x-rays. (*Id.*, PageID.5). According to Jessie, the x-ray technician (presumably Defendant Wolosion) discovered the "foreign object" inside his stomach; Wolosion apparently responded to Jessie's request for surgery by indicating that surgery was not necessary, as the object would most likely "travel through his digestive system just fine without causing damage." (*Id.*).

When Jessie kited health care a few days later, reporting blood in his stool, along with pain in his rectum and gut area, a second x-ray was performed on August 22, 2019. (*Id.*, PageID.5-6). Jessie alleges that the x-ray showed that the "object had moved around a bit," and it was still believed that surgery was unnecessary and that the object "should come out eventually." (*Id.*, PageID.6). Ultimately, Jessie underwent a series of six x-rays between August and September 2019; by the time of the last x-ray, the piece of metal was no longer visible, and it was presumed that Jessie had expelled it. (*Id.*).

In his complaint, Jessie alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment as a result of their alleged inaction in treating him. (ECF No. 1, PageID.5). In the instant motion, Defendants argue that summary judgment is appropriate on Jessie's claims against them. For the reasons set forth

3

below, the Court agrees with the Defendants.

B.  **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative

4

showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.     Analysis**

      *1.     Jessie's Claims Against Nursing Supervisor Saph*

Jessie's claims against Supervisor Saph are difficult to discern, but broadly speaking, Jessie seems to claim that Saph violated his Eighth Amendment rights in relation to his treatment following his suicide attempt by "render[ing] an opinion for treatment (or non-treatment) in an area [he][2] does not qualify to give an opinion in when [he] confirmed with [Wolosion] that [Jessie's] injury did not cause for surgery or pain medication without consulting a surgery doctor or other qualified specialist, offering no solution to the problem which constituted [] ineffective/inadequate treatment …." (ECF No. 1, PageID.3, 5, 9).

In order to demonstrate liability under § 1983 as to any particular defendant, a plaintiff must make a clear showing that each defendant was personally involved in the

---

[2] In his complaint, Jessie does not identify Saph by name. (ECF No. 1). Rather, in paragraph 9 of his complaint, Jessie references an "unknown female nurse" who "gave an opinion in a[n] area she does not qualify for . . ." (*Id.*, PageID.3). Later, in paragraph 44, Jessie makes the same allegation against the same "unknown female nurse." (*Id.*, PageID.9; *see also id.*, PageID.17, ¶40). In an order dated September 8, 2021, the prior magistrate judge assigned to this case ordered the MDOC to "make reasonable efforts to identify" the unknown defendants. (ECF No. 15). An answer was later filed that appears to identify the "unknown female nurse" as defendant Saph, who is actually male. (ECF No. 56, PageID.267, ¶9; ECF No. 79, PageID.393 ("Saph states that he was a nursing supervisor")). Jessie did not object to that identification. Accordingly, the Court will use "he" or "him" when referring to defendant Saph. Additionally, the Court notes that in a filing Jessie made on November 24, 2021, Jessie suggested that defendant Saph was the individual described in the complaint who allegedly "prescribed [him] a 48 hour liquid diet . . ." (ECF No. 32, PageID.128; *cf.* ECF No. 1, PageID.3, ¶8 (referring to an "unknown nurse/doctor" and alleging that "he/she" "placed him on a '48 hour' liquid diet …"). However, it has since been adjudicated in this case that (1) the person who prescribed the 48-hour liquid diet was a different nurse, and (2) prescribing the liquid diet did not rise to the level of deliberate indifference. *See infra* at 11, n. 5.

activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under § 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger § 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Rather, liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In an affidavit filed in support of his motion for summary judgment, Supervisor Saph clearly and unequivocally avers that he had no personal involvement with, nor supervision of, the medical care provided to Jessie arising out of his August 8, 2019 suicide attempt. (ECF No. 79-3, PageID.512). Indeed, Supervisor Saph avers that his only involvement with respect to Jessie and his current claim consisted of making two phone calls (with Jessie's permission) to Jessie's mother to update her on Jessie's health condition. (*Id.*). In his response to the Defendants' motion, Jessie did not challenge Supervisor Saph's averment about not having any personal involvement in Jessie's medical care. (ECF No. 82). Based on this analysis alone, summary judgment is appropriate on Jessie's Eighth Amendment claim against Supervisor Saph. *See Rizzo*, 423 U.S. at 377;

6

*Bellamy*, 729 F.2d at 421.[3]

    2. *Jessie's Claims Against Defendants Phaneuf, Nguyen, and Wolosion*

  As set forth above, Jessie also brings Eighth Amendment claims against Nurse Phaneuf, Nurse Nguyen, and x-ray technician Wolosion. As to each of his Eighth Amendment claims, Jessie must prove that the defendant in question was deliberately indifferent to his serious medical needs. To succeed on such a claim, Jessie must satisfy two elements: one objective, and one subjective. Specifically, he must show that he had a serious medical need (the objective prong) and that the defendant, being aware of that need, acted with deliberate indifference to it (the subjective prong). *See Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010).

  With respect to the objective prong, a serious medical need "must cause more than mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted). Rather, "[t]he objective component requires the existence of a sufficiently serious medical need." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012). A serious medical need is one that "has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (internal quotations omitted) (emphasis in original). An injury is sufficiently serious to satisfy the objective component if a reasonable doctor or patient

---

[3] Moreover, Jessie's allegation that Saph merely "gave an opinion in a[n] area [he] does not qualify for," does not, without more, constitute deliberate indifference because Jessie presents no information that Saph was aware Jessie actually needed any treatment different than what was provided to him. *See infra* at 7-14.

7

would find it "important and worthy of comment or treatment"; if it "significantly affects an individual's daily activities"; or if its existence causes "chronic and substantial pain." *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (internal citations omitted).

To satisfy the subjective prong, the plaintiff must show that the defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles*, 478 F. App'x at 975 (quoting *Horn v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal citations and quotations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). As the Sixth Circuit further explained in *Comstock*:

8

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted for the very purpose of causing harm or with knowledge that harm will result. Instead, deliberate indifference to a substantial risk of serious harm to a prison is the equivalent of recklessly disregarding that risk.

*Id.* (internal citations and quotations omitted).

Mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment the prisoner needs do not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

For purposes of the instant motion, the Court will assume Jessie's medical condition after swallowing a metal object satisfies the deliberate indifference standard's objective prong, in that it caused more than "mere discomfort or inconvenience." *Talal*, 403 F.3d at 426 (internal quotations omitted). To satisfy the subjective prong, however, Jessie must show, with respect to each named defendant, that he or she knew of and disregarded an excessive risk to Jessie's health or safety by showing that he or she (1) was aware of facts

9

from which an inference could be drawn that a substantial risk of serious harm existed, and (2) actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Jessie failed to raise a material question of fact as to either of those prongs.

        *a.*      *Nurse Phaneuf*

As set forth above, Jessie alleges that Nurse Phaneuf saw him on August 8, 2019, at which time he told her he swallowed a metal piece that he broke off of his eyeglasses. (ECF No. 1, PageID.3; ECF No. 79-4, PageID.516). According to Nurse Phaneuf's affidavit, she examined Jessie at that time, noting that he was alert and oriented, showed no signs of bleeding or trauma to the mouth, and was swallowing saliva without difficulty. (ECF No. 79-4, PageID.516). Nurse Phaneuf further avers that Jessie's respirations were unlabored, his lungs were clear, he showed bowel sounds in all four quadrants, and he had no abdominal pain with palpation. (*Id.*). Nurse Phaneuf instructed Jessie not to swallow any foreign objects in the future and told him to notify the nurse if he developed any nausea, vomiting, bleeding, difficulty swallowing, shortness of breath, abdominal pain, or other concerning symptoms. (*Id.*). According to Nurse Phaneuf, Jessie understood and agreed with this plan of action. (*Id.*, PageID.517).

Nurse Phaneuf's sworn statements are supported by the medical records underlying the incident (ECF No. 79-5, PageID.683-87), and Jessie has come forward with no evidence to the contrary. Jessie's own personal opinions that Nurse Phaneuf acted "without a sense of urgency" and should have immediately sent him for x-rays (ECF No. 1, PageID.4) are mere disagreements about the quality of the care she provided, and are insufficient to meet the subjective prong of the deliberate indifference standard. *See, e.g.,*

10

*Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996) (a medical decision not to order an x-ray does not represent cruel and unusual punishment and at most is medical malpractice); *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) (simple disagreement regarding medical treatment is not cognizable as a federal constitutional claim). Thus, summary judgment in favor of Nurse Phaneuf is appropriate.

### b. Nurse Nguyen

The evidence with respect to Nurse Nguyen is similar. According to Jessie's medical records, Nurse Nguyen examined him on August 9, 2019, when he presented with, in relevant part, a gastrointestinal issue. (ECF No. 79-5, PageID.677-80). At that time, Jessie complained of sharp pain to the lower left quadrant of his abdomen, pain with palpation to the left upper quadrant, and nausea (but no vomiting). (ECF No. 79-6, PageID.691). However, Jessie was calm, cooperative, and exhibited no grimacing, diaphoresis, guarding, or holding of his abdomen. (*Id.*). He also stated he had not had a bowel movement since prior to swallowing the metal piece. (*Id.*).

In response to Jessie's complaints, Nurse Nguyen called the on-call medical provider, Nurse Practitioner Juliana Martino. (*Id.*).[4] NP Martino ordered health care to monitor Jessie for signs and symptoms of an acute abdomen on every shift, to start Jessie

---

[4] Martino was conclusively identified as the defendant Jessie refers to as the "unknown nurse/doctor" in paragraph 8 of his complaint who prescribed him a "'48 hour' liquid diet" to initially treat his condition. (ECF No. 1, PageID.3; ECF No. 61, PageID.294; ECF No. 83, PageID.718). Defendant Martino has since been dismissed from the case based on a finding that her conduct did not rise to the level of deliberate indifference. (ECF No. 83).

on a clear liquid diet,[5] and to notify her if any signs or symptoms of an acute abdomen developed. (*Id.*, PageID.691-92). The next day, August 10, 2019, Nurse Nguyen again assessed Jessie in his cell, noting that he was ambulatory with a steady gait; calm and cooperative; and not grimacing. (*Id.*, PageID.692). Jessie did not report abdominal pain or any other concerning symptoms; rather, he indicated that his actions had been taken in an effort to get transferred, saying, "I thought if I just said I swallowed it and had pain you guys had to take me to the hospital." (ECF No. 79-5, PageID.669). Jessie denied questions or concerns at that time, indicating "he was going on a hunger strike and refus[ing] a liquid diet." (ECF No. 79-6, PageID.692). Nurse Nguyen next saw Jessie three times on August 24, 2019 (during medication passes), noting that he did not appear to be in distress, was eating and drinking fluids, displayed no signs of pain or distress, and did not voice any concerns. (ECF No. 79-5, PageID.627).

This was the extent of Nurse Nguyen's interaction with Jessie regarding the incident at issue, and there simply is no evidence that she was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and actually drew the inference. *See Farmer*, 511 U.S. at 837. While Jessie might believe that Nurse Nguyen should have done something more or different in treating him, he has pointed to nothing in the record from which the Court can conclude that her actions were more than – at most – mere negligence, which does not rise to the level of an Eighth Amendment violation. *See*

---

[5] Jessie apparently refused the liquid diet prescribed on August 9, 2019, but MDOC custody officers reported to Nurse Nguyen the next day that Jessie had eaten two "snack bags" the prior evening and that afternoon, despite being instructed to avoid solid food. (ECF No. 79-6, PageID.692).

12

*Comstock*, 273 F.3d at 703; *see also Rhinehart v. Scutt*, 894 F.3d 721, 738-39 (6th Cir. 2018) (a medical provider's errors in medical judgment or other negligent behavior do not establish deliberate indifference). Thus, summary judgment should be granted for Nurse Nguyen.

### c.    X-Ray Technician Wolosion

Finally, Jessie sues x-ray technician Wolosion, whose only involvement with Jessie's medical treatment was performing x-rays on him on August 14, 20, 22, 26, and September 4, 2019. (ECF No. 79-7, PageID.697). In her affidavit, Wolosion unequivocally avers that she is not a medical provider and, thus, does not diagnose or treat patients. (*Id.*). Rather, she merely performs the type of x-ray ordered by a medical provider. (*Id.*). She also does not have the authority to send prisoners off-site to hospitals (whether for x-rays or other treatment). (*Id.*).

It is unclear exactly what conduct by Wolosion Jessie believes constitutes deliberate indifference, let alone what he believes she should have done differently given her limited job responsibilities and authority. Again, the undisputed evidence is that Wolosion's job was simply to perform the x-rays as ordered by Jessie's medical providers, and that she did exactly that. To the extent Jessie is arguing that Wolosion acted with deliberate indifference when she allegedly told him that surgery was unnecessary because the metal object would most likely "travel through his digestive system just fine without causing damage" (ECF No. 1, PageID.5), such argument fails. Where the record evidence establishes that Wolosion lacked the authority to take any additional actions, or perform other medical procedures, Jessie simply has not established an Eighth Amendment

violation against her. *See Runion v. Spencer*, No. 19-11812, 2020 WL 6092515, at *5 (E.D. Mich. Aug. 13, 2020) (where defendant provided sworn affidavit stating that she had no authority to recommend or approve procedure or appointment, "she cannot be held responsible for choices she lacked the authority to make"); *see also Rains v. Wellman*, No. 20-cv-32, 2022 WL 18587783, at *8 (W.D. Mich. Dec. 30, 2022) (where defendant did not have the authority to provide the relief requested without an order from a medical provider, or provide the plaintiff with medical care, the plaintiff named the "wrong defendant[]" for purposes of his deliberate indifference claim). For these reasons, summary judgment is appropriate in favor of Wolosion.

In sum, the record is replete with evidence that Jessie received medical treatment from Nurse Phaneuf, Nurse Nguyen, and x-ray technician Wolosion after he deliberately swallowed a foreign object. He was evaluated, monitored, prescribed a liquid diet (with which he refused to comply), and x-rayed no fewer than six times. The fact that Jessie disagrees with the medical judgment exercised by his treatment providers is insufficient to establish an Eighth Amendment violation. *See Westlake*, 537 F.2d at 860, n. 5 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *see also Rhinehart*, 894 F.3d at 738-39 (a medical provider is not liable under the Eighth Amendment if he provides reasonable treatment, even if the plaintiff disagrees with that course of treatment or even if the course of treatment ultimately proves harmful).

Thus, for all the reasons explained above, summary judgment should be granted in

favor of all four of the remaining defendants.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 79)** be **GRANTED**.

Dated: April 19, 2023  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2023.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager